**EXHIBIT "A"**

# NOTE



JANUARY 4, 2002        STROUDSBURG,        **PENNSYLVANIA**
[Date]        [City]        [State]

**2635 BLYTHEBURN ROAD RD, MOUNTAIN TOP, PA 18707**
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$140,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.875%.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **MARCH 1, 2002.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **FEBRUARY 1, 2032,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
**4242 N. HARLEM AVE.**
**NORRIDGE, IL 60706**
**ATTN: CASHIERING**
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$919.70.**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
DAVID SATTOF

_____ (Seal)
SANDRA D. SATTOF

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE
ABN AMRO MORTGAGE GROUP, INC.

_____
MARGARET A. BEZY
VICE PRESIDENT

**EXHIBIT "B"**

RECORDER OF DEEDS
LUZERNE COUNTY
PENNSYLVANIA
INSTRUMENT NUMBER
5414867
RECORDED ON
Jan 11, 2002
1:13:19 PM
BOOK:REC/3002
PAGE:9175
Total Pages: 16

LUZERNE COUNTY
RECORDING FEE          $37.00
PA WRIT TAX            $0.50
LUZERNE COUNTY
ARCHIVES FEES          $1.00
LUZERNE RECORDER'S
ARCHIVES FEE           $1.00
TOTAL                  $39.50

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
P.O. BOX 5064
TROY, MICHIGAN 48084
ATTN:FINAL/TRAILING DOCUMENTS

Community Abstract & Settlement, LLC
3008 Hamilton East, Suite 2
Stroudsburg, PA 18360



I hereby CERTIFY that this
document is recorded in the
Recorder of Deeds Office of
Luzerne County, Pennsylvania

Mary K. Dysleski

MARY K. DYSLESKI
RECORDER OF DEEDS

—————— [Space Above This Line For Recording Data] ——————

# MORTGAGE

## DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JANUARY 4, 2002,
together with all Riders to this document.

(B) "Borrower" is DAVID SATTOF AND SANDRA D. SATTOF, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is   ABN AMRO MORTGAGE GROUP, INC.

Lender is a   CORPORATION                                  organized and existing under the laws
of  DELAWARE.                                              Lender's address is   2600 W. BIG
BEAVER RD., TROY, MICHIGAN 48084.

Lender is the mortgagee under this Security Instrument.

Initials:  DSSDS

PENNSYLVANIA--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT
Form 3039 1/01                        Page 1 of 15          PAUDEED      PAUDEDL 0109

**(D)** "Note" means the promissory note signed by Borrower and dated **JANUARY 4, 2002.**
The Note states that Borrower owes Lender **\*\*\*\*\*\*\*ONE HUNDRED FORTY THOUSAND AND NO/100**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*Dollars** (U.S. **$140,000.00** )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not
later than **FEBRUARY 1, 2032.**
**(E)** "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
**(F)** "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.
**(G)** "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders
are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**(H)** "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable
judicial opinions.
**(I)** "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization.
**(J)** "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer,
or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
**(K)** "Escrow Items" means those items that are described in Section 3.
**(L)** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)
conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition
of the Property.
**(M)** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
**(N)** "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
**(O)** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage
loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Initials: _CS SDS_

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3039 1/01                    **Page 2 of 15**                         PAUDEDL

REC Book 3002 Page 9176

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the  **COUNTY**                                     [Type of Recording Jurisdiction] of

**LUZERNE**                                     [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

which currently has the address of  **2635 BLYTHEBURN ROAD RD, MOUNTAIN TOP,**

                                                                                          [Street] [City]

Pennsylvania      **18707**                      ("Property Address"):

            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,

Initials: _DS, SDS_

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3039 1/01                                     **Page 3 of 15**                                     PAUDEDL

REC Book **3002** Page **9177**

Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event

Initials: *DS SDS*

REC Book 3002 Page 9178

of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument,

Initials: _LS. SDS_

REC Book 3002 Page 9179

Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole

Initials: _DS SDS_

REC Book 3002 Page 9180

obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6.  Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   **8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   **9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has

Initials: _DS. DS_

REC Book 3002 Page 9181

abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

Initials: _DS SDS_

REC Book 3002 Page 9182

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or Might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed ''captive reinsurance.'' Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance. To have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

Initials: *DS. SDS*

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Initials: *DS, SDS*

REC Book 3002 Page 9184

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower

Initials: _DS SDS_

REC Book 3002 Page 9185

must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances:

Initials: _QS JDS_

REC Book 3002 Page 9186

gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws

Initials: *DS SDS*

REC Book 3002 Page 9187

providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

    **25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

    **26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

    **27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DAVID SATTOF

_____ (Seal)
SANDRA D. SATTOF

REC Book 3002 Page 9188

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3039 1/01               **Page 14 of 15**                           PAUDEDL

Certificate of Residence

I, _Sharon Rauscher_

do hereby certify that the correct address of the within-named Mortgagee is **2600 W. BIG BEAVER RD., TROY, MICHIGAN 48084**

Witness my hand this _4th_ day of _January 2002_

_Sharon Rauscher_

Agent of Mortgagee

Commonwealth of **PENNSYLVANIA**

County of: _Luzerne_

On this the _4th_ day of _January 2002_ before me, _Sharon Rauscher_, the undersigned officer, personally appeared **DAVID SATTOF AND SANDRA D. SATTOF**, known to me (or satisfactorily proven) to be the person whose name**s** subscribed to the within instrument and acknowledged that **they** executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

My commission expires: _____

_Sharon Rauscher_

_Notary Public_

Title of Officer

Notarial Seal
Sharon Rauscher, Notary Public
Wilkes-Barre, Luzerne County
My Commission Expires Dec. 23, 2002
Member, Pennsylvania Association of Notaries

Initials: _RS, SDS_

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3039 1/01                     Page 15 of 15                     PAUDEDL

REC Book 3002 Page 9189

# EXHIBIT A
## LEGAL DESCRIPTION

All that certain piece or parcel of land situated in the Township of Rice, County of Luzerne, and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

Beginning at a corner in the westerly line of Lake Road, said corner being the northeast corner of lands now or late of Joseph E. Gibbon, et us;

Thence along the northerly line of lands now or late of Joseph E. Gibbon, et ux, and through lands now or late of Frank J. Bavitz, et us, South 75 degrees 10 minutes West, four hundred (400) feet to a corner in the easterly lime of a proposed Street known as Myrtle Road;

Thence along said last mentioned line, North 14 degrees 50 minutes West, one hundred fifty (150) feet to a corner in the southerly line of a proposed fifty (50) foot street;

Thence along the southerly line of aforesaid (50 foot Stret, North 75 degrees 19 minutes East, four hundred (400) feet to a corner in the aforementioned westerly line of Lake Road;

Thence along the westerly line of Lake Road, South 14 degrees 50 minutes East, one hundred fifty (150) feet to the place of Beginning.

Containing 1.38 acres, more or less.

Being the same premises conveyed by David Sattof, a one-half (1/2) interest and Sandra D. Norton, now by marriage, Sandra D. Sattof, a one half (1/2) interest dated April 9, 1999 and recorded April 4, 1999 in Luzerne County Deed Book 2675, Page 201 and conveyed unto David Sattof and Sandra D. Sattof, Husband and Wife.

Parcel ID #: ███████

CERTIFIED PROPERTY IDENTIFICATION NUMBER

MUNICIPALITY _Rice Twp_

PIN MAT _M8S2_ BLOCK _1_ LOT _5C_

TRANSFER_____ DIVISION_____

DATE _1/11/02_          _T. Pannk_
                        Mapping Clerk

REC Book 3002 Page 9190

```
          RECORDERS OFFICE
         LUZERNE COUNTY, PA
```

```
███████████████████████  AD
```

### -- CHARGES -

| | |
|---|---|
| )1 MORTGAGE | $39.5 |

```
strument Number - 5414667
corded on - Jan 11  2002 1:13:19 PM
ok/Page: REC/3002/9175
tal Pages: 15
nicipality - RICE TOWNSHIP
rtgagor - SATTOF, DAVID
rtgagee - ABN AHRO MORTGAGE GROUP, INC.
nsideration - $140,000.00
e Detail:
```

| | |
|---|---|
| PAGES RECORDING FEE | $37.00 |
| PA WRIT TAX | $0.50 |
| ARCHIVES FEE-COUNTY | $1.00 |
| ARCHIVES FEE-RECORDER | $1.00 |

```
ement - 2635 BLYTHEBURN ROAD
```

| | |
|---|---|
| TAL CHARGES | $39.50 |

### -- PAYMENTS --

| | |
|---|---|
| ECK: 81055 | $39.50 |
| TAL PAYMENTS | $39.50 |

| | |
|---|---|
| MOUNT DUE | $39.50 |
| AYMENT ON INVOICE | ($39.50 |
| ALANCE DUE | $0.00 |

```
ustomer:
.A. FINANCIAL SERVICES, INC.
```

```
         THANK YOU
       MARY K. DYSLESKI
       RECORDER OF DEEDS
```

**EXHIBIT "C"**

# LOAN MODIFICATION AGREEMENT

Borrower ("I")[1]: **DAVID SATTOF and SANDRA D SATTOF**
Lender ("Lender"): **JPMORGAN CHASE BANK, N.A.**
Date of First Lien Security Instrument ("Mortgage") and Note ("Note"): **JANUARY 04, 2002**
Loan Number: ▮▮▮▮▮ ("Loan")
Property Address: **2635 BLYTHEBURN RD, MOUNTAIN TOP, PENNSYLVANIA 18707** ("Property")

If my representations in Section 1 continue to be true in all material respects, then the provisions of Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and supplement (i) the Mortgage on the Property, and (ii) the Note secured by the Mortgage. The Mortgage and Note together, as may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

I have provided confirmation of my financial hardship and documents to permit verification of all of my income to determine whether I qualify for the offer described in this Agreement. This Agreement will not take effect unless and until the Lender signs it.

1.  **My Representations.** I represent to the Lender and agree:
    A.  I am experiencing a financial hardship and, as a result, am either in default under the Loan Documents or a default is imminent.

    B.  The Property is neither in a state of disrepair, nor condemned.

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents.

    D.  I am not a party to any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

    E.  I have provided documentation for all income that I earn.

    F.  All documents and information I provide pursuant to this Agreement are true and correct.

2.  **The Modification.** The Loan Documents are hereby modified as of **MAY 01, 2016** ("Modification Effective Date"), and all unpaid late charges are waived. The Lender agrees to suspend any foreclosure activities so long as I comply with the terms of the Loan Documents, as modified by this Agreement. The Loan Documents will be modified, and the first modified payment will be due on the date set forth in this Section 2:

    A.  The Maturity Date will be: **APRIL 01, 2056.**

    B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts toward taxes, insurance, or other assessments. The new principal balance of my Note is **$152,220.81** ("New Principal Balance").

    C.  The Interest Bearing Principal Balance will re-amortize over **480** months.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa, where appropriate.

LOAN MODIFICATION AGREEMENT -    ver. 03_24_2016_11_01_47



Interest will begin to accrue as of **APRIL 01, 2016**. The first new monthly payment on the New Principal Balance will be due on **MAY 01, 2016**, and monthly on the same date thereafter.

My payment schedule for the modified Loan is as follows:

Interest will accrue on the New Principal Balance at the rate of **4.625%** annually. The monthly payment amount for principal and interest will be **$696.61**, which is an amount sufficient to amortize the New Principal Balance over a period of **480** months.

The above terms in this Section 2.C shall supersede any provisions to the contrary in the Loan Documents, including, but not limited to, provisions for an adjustable or step interest rate.

D.   (i) The New Principal Balance, and (ii) any other amounts still due under the Loan Documents, will be paid by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire New Principal Balance, or the Maturity Date.

E.   I will be in default if (i) monthly payments are not made in full on the date they are due, or (ii) comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the New Principal Balance will be the rate set forth in Section 2.C.

3.   **Additional Agreements**. I agree to the following:

A.   That this Agreement shall supersede the terms of any modification, forbearance, or workout plan, if any, that I previously entered into with the Lender.

B.   To comply, except to the extent that they are modified by this Agreement, or by the U.S. Bankruptcy Code, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C.   That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms.

D.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, or by the U.S. Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

LOAN MODIFICATION AGREEMENT -     ver. 03_24_2016_11_01_47



*(page 2 of 6 pages)*

E. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which all sums secured by the Mortgage will come due. If payment of these sums is not made prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F. That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

G. If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

I. That, if Borrower is in bankruptcy upon execution of this document, Borrower will cooperate fully with Lender in obtaining any required Bankruptcy Court and trustee approvals in accordance with local court rules and procedures. Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

J. If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

K. That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

Loan Number ████████

L. I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

LOAN MODIFICATION AGREEMENT ·   ver. 03_24_2016_11_01_47

*(page 4 of 6 pages)*

## TO BE SIGNED BY BORROWER ONLY

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And DAVID  SATTOF and SANDRA D SATTOF, LOAN NUMBER ███████ WITH A MODIFICATION EFFECTIVE DATE OF May 01, 2016

In Witness Whereof, the Borrower(s) have executed this agreement.

Borrower - **DAVID SATTOF**          Date: _4 ı 8 ı 16_

Borrower - **SANDRA D SATTOF**          Date: _4 ı 8 ı 16_

LOAN MODIFICATION AGREEMENT -    ver. 03_24_2016_11_01_47

*(page 5 of 6 pages)*

**TO BE SIGNED BY LENDER ONLY**

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And DAVID SATTOF and SANDRA D SATTOF, LOAN NUMBER ████████ WITH A MODIFICATION EFFECTIVE DATE OF May 01, 2016

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _____

Printed Name:

**Todd Hale**
**Vice President**

Execution Date: _____4-21-2016_____

LOAN MODIFICATION AGREEMENT - ver. 03_24_2016_11_01_47

*(page 6 of 6 pages)*

# EXHIBIT "D"

PREPARED BY: SMI
<u>RECORDING REQUESTED BY</u>
<u>/AFTER RECORDING RETURN TO:</u>

Stewart Mortgage Information
Attn. Sherry Doza
P.O. Box 540817
Houston, Texas 77254-0817
Tel. (800) 795-5263

RECORDER OF DEEDS
LUZERNE COUNTY
PENNSYLVANIA

INSTRUMENT NUMBER
5464355
RECORDED ON
Sep 19, 2002
11:33:39 AM
BOOK: REC/3002
PAGE: 228964
Total Pages: 1

| | |
|---|---|
| LUZERNE COUNTY RECORDING FEE | $13.00 |
| PA WRIT TAX | $0.50 |
| LUZERNE COUNTY ARCHIVES FEE | $2.00 |
| LUZERNE RECORDER'S ARCHIVES FEE | $3.00 |
| TOTAL | $18.50 |

REC Book 3002 Page 228964

(Space Above this Line For Recorder's Use Only)

# ASSIGNMENT of MORTGAGE

STATE OF PENNSYLVANIA          KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF LUZERNE

That ABN AMRO MORTGAGE GROUP, INC. ('Assignor'), acting herein by and through a duly authorized officer, the owner and holder of one certain promissory note executed by DAVID SATTOF AND SANDRA D. SATTOF ('Borrower(s)') secured by a Mortgage of even date therewith executed by Borrower(s) for the benefit of the holder of the said note, which was recorded on the lot(s), or parcel(s) of land described therein situated in the County of Luzerne, State of Pennsylvania:

     Recording Ref:   Recorded on 1/11/2002, Book REC/3002, Page No. 9175
     Township:   RICE
     Original Beneficiary:   ABN AMRO MORTGAGE GROUP, INC.
     Property Address:   2635 BLYTHEBURN ROAD
                      MOUNTAIN TOP PA 18707

For and in consideration of the sum of Ten and No/100 dollars ($10.00), and other good valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and assign, set over and deliver unto MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for Washington Mutual Bank, FA (Assignee) all beneficial interest in and to title to said Mortgage, together with the note and all other liens against said property securing the payment thereof, and all title held by the undersigned in and to said land.

PIN#: PARCEL ID # : M852-BI-L5C
TO HAVE AND TO HOLD unto said Assignee said above described Mortgage and note, together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

Effective the 16th day of July A.D. 2002 and executed     ABN AMRO MORTGAGE GROUP, INC.
this the 8th day of August A.D. 2002.

                                      By: _____
                                         SHERRY DOZA
                                         VICE PRESIDENT

THE STATE OF TEXAS
COUNTY OF HARRIS

On this the 8th day of August A.D. 2002, before me, a Notary Public, appeared SHERRY DOZA to me personally known, who being by me duly sworn, did say that (s)he is the VICE PRESIDENT OF ABN AMRO MORTGAGE GROUP, INC., and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and said SHERRY DOZA acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

                                       _Odelia Bergeron_

I DO CERTIFY THAT THE
PRECISE RESIDENCE OF
THE WITHIN ASSIGNEE IS:

Assignee's Address:                          Assignor's Address:
P.O. BOX 2026                             2600 WEST BIG BEAVER ROAD
FLINT, MICHIGAN 48501-2026               TROY, MI 48007-3703

On behalf of Assignee



                                     ODELIA BERGERON
                                     NOTARY PUBLIC
                                     STATE OF TEXAS
                                     Comm. Exp. 03-12-2003

CERTIFIED PROPERTY IDENTIFICATION NUMBER

MUNICIPALITY _Rice Twp_

PIN MAP _M852_ BLOCK _1_ LOT _5C_

TRANSFER _____       DIVISION _____

DATE _8.23.02_             Mapping Clerk



I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Luzerne County, Pennsylvania.

                                  _Mary K. Dysleski_
                                  MARY K. DYSLESKI
                                  RECORDER OF DEEDS



## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **Mortgage Electronic Registration Systems Inc as a nominee for Washington Mutual Bank** hereinafter **Assignor** the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **Washington Mutual Bank F.A., "Assignee"** at the time of execution hereof, sell, assign, transfer and set over unto the said Assignee, the receipt whereof is hereby acknowledged, does hereby grant, bargain, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by David Sattof and Sandra D Sattof to ABN AMRO Mortgage Group, bearing the date 01/04/02, in the amount of **$140,000.00**, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on **01/11/02** in the County of Luzerne, Commonwealth of Pennsylvania, in Mortgage Book **3002 Page 9175**, which Mortgage was assigned to Mortgage Electronic Registration Systems Inc as a nominee for Washington Mutual Bank recorded 09/19/02 in book 3002 and page 228964.
Being Known as Premises: **2635 Blytheburn Rd, Mountain Top, PA 18707**
Parcel No: **53-M8S2-001-0SC**
Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed. Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:
TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises hereby granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.
IN WITNESS WHEREOF, the said **Assignor** has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 15th day of February, 2007.

DC/20

**Mortgage Electronic Registration Systems Inc as a nominee for Washington Mutual Bank**

Sealed and Delivered
in the presence of us;

By: _____
Liquenda Allotey , Vice President
Attest: _____
Chris Anderson   Asst. Secretary

State of Minnesota :

                    ss.

County of Dakota       :

On this 15th day of February, 2007, before me, the subscriber, personally appeared
_____Liquenda Allotey___, who acknowledged him/herself to be the Vice President
of **Mortgage Electronic Registration Systems Inc as a nominee for Washington Mutual Bank**, and that he/she, as such Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained.
        IN WITNESS WHEREOF, I hereunto set my hand and official seal.



Notary Public

**Stamp/Seal**
AMBER KAISER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31 2011

The precise address of the
within named Assignee is:
**11200 West Parkland Ave
Milwaukee WI 53224**
By: _____
(For Assignee)

After recording return to:
**Phelan, Hallinan and Schmieg LLP
One Penn Center
1617 J.F.K. Blvd., Ste.1400
Philadelphia, PA 19103-1814**

2/14/07-JHC
Document Request
8423875999

CERTIFIED PROPERTY IDENTIFICATION NUMBER

MUNICIPALITY _Rice Twp_
PIN MAP _M8S2_ BLOCK _1_ LOT _5C_

TRANSFER _____ DIVISION _____
DATE _03-6-07_

REC Book **3007** Page **99607**

***Land Services of PA***
***400 Fellowship Road, Suite 250***
***Mt. Laurel, NJ 08054***
***(856) 793-3200***
***Fax (856) 793-3201***

## RECORD OWNER AND LIEN CERTIFICATE

Issue Date: 01/23/2007
Effective Date: OJS/PRO 01/10/2007
RD 01/17/2007

Servicer: WASHINGTON MUTUAL BANK
Client Number: 148229

Premises: 2635 Blytheburn Road, Mountaintop, PA 18707
Rice Township
Luzerne County
Pennsylvania

Based upon the examination of evidence in the appropriate public records, Company certifies that the premises endorsed hereon are subject to the liens, encumbrances and exceptions to title hereinafter set forth. This Certificate does not constitute title insurance; liability hereunder is assumed by the Company solely in its capacity as an abstractor for its negligence, mistakes or omissions in a sum not to exceed Two Thousand Dollars.

## DESCRIPTION

ALL that certain piece or parcel of land situated in the Township of Rice, County of Luzerne, and Commonwealth of Pennsylvania, bounded and described as follows, to wit:

BEGINNING at a corner in the westerly line of Lake Road, said corner being the northeast corner of lands now or late of Joseph E. Gibbon, et ux;

THENCE along the northerly line of lands now or late of Joseph E. Gibbon, et ux, and through lands now or late of Frank J. Bavitz, et ux, South 75 degrees 10 minutes West, four hundred (400) feet to a corner in the easterly line of a proposed Street known as Myrtle Road;

THENCE along said last mentioned line, North 14 degrees 50 minutes West, one hundred fifty (150) feet to a corner in the southerly line of a proposed fifty (50) foot Street;

THENCE along the southerly line of aforesaid fifty (50) foot Street, North 75 degrees 19 minutes East, four hundred (400) feet to a certain in the aforementioned westerly line of Lake Road;

THENCE along the westerly line of Lake Road, South 14 degrees 50 minutes East, one hundred fifty (150) feet to the place of Beginning.

REC Book **3007** Page **99608**

ATTACHED TO AND FORMING A PART OF RECORD OWNER AND LIEN CERTIFICATE

Servicer: **WASHINGTON MUTUAL BANK**

CONTAINING 1.38 acres, more or less. M852 B1 L5C Rice Twp.

BEING the same premises conveyed in David Sattof and Sandra D. Norton, dated October 24, 1998 and recorded November 19, 1998 in Luzerne County Deed Book 2660, page 312.

PARCEL IDENTIFICATION NO:                    PLATE #:

RECORDER OF DEEDS
LUZERNE COUNTY
PENNSYLVANIA

INSTRUMENT NUMBER
5759907
RECORDED ON
Apr 18, 2007
1:05:52 PM
BOOK:REC/3007
PAGE:99607
Total Pages: 3

| | |
|---|---|
| PA WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| LUZERNE COUNTY RECORDING FEE | $13.00 |
| LUZERNE COUNTY ARCHIVES FEE | $2.00 |
| LUZERNE RECORDER'S ARCHIVES FEE | $3.00 |
| TOTAL PAID | $28.50 |

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Luzerne County, Pennsylvania.

*Mary K Dysleski*

MARY K. DYSLESKI
RECORDER OF DEEDS

REC Book 3007 Page 99609

Prepared By / Return To:
E.Lance/NTC, 2100 Alt. 19 North,
Palm Harbor, FL 34683
(800)346-9152

CERTIFIED PROPERTY IDENTIFICATION NUMBER

MUNICIPALITY *Rice Twp*

PIN MAP *M852* BLOCK *1* LOT *5C*

TRANSFER _____ DIVISION _____

DATE *11-9-12* *PMR*

MAPPING CLERK

## ASSIGNMENT OF MORTGAGE

Contact **JPMORGAN CHASE BANK, N.A.** for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203,** (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203** (866)756-8747, **ITS SUCCESSORS OR ASSIGNS,** (ASSIGNEE).

Said Mortgage dated 01/04/2002, in the amount of $140,000.00 made by **DAVID SATTOF AND SANDRA D. SATTOF** to **ABN AMRO MORTGAGE GROUP, INC.** recorded on 01/11/2002, in the Office of the Recorder of Deeds of LUZERNE County, Pennsylvania, in Book 3002, Page 9175 (or Document # n/a)

Property more commonly known as: 2635 BLYTHEBURN ROAD RD TWP. OF RICE, MOUNTAIN TOP, PA 18707

**This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.**

**This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)**



I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office of Luzerne County, Pennsylvania.

Joan Hoggarth
JOAN HOGGARTH
CLERK OF RECORDS

REC Book 3012 Page 201362

RECORDER OF DEEDS
LUZERNE COUNTY
PENNSYLVANIA

INSTRUMENT NUMBER
6033275
RECORDED ON
Nov 13, 2012
9:31:05 AM
BOOK=REC/3012
PAGE=201362
Total Pages: 2

| | |
|---|---|
| PA WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| LUZERNE COUNTY RECORDING FEE | $18.00 |
| LUZERNE COUNTY ARCHIVES FEE | $2.00 |
| LUZERNE RECORDER'S ARCHIVES FEE | $3.00 |
| TOTAL PAID | $47.00 |
| INV: | 694318 |

IN WITNESS WHEREOF, this Assignment is executed on __10 / 23__ /2012 (MM/DD/YYYY)
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL
BANK F/K/A WASHINGTON MUTUAL BANK, FA, by JPMORGAN CHASE BANK, NATIONAL
ASSOCIATION, its Attorney-in-Fact

By: _Natasha Pnie_

_Natasha Pnie_ . **VICE PRESIDENT**

STATE OF LOUISIANA    PARISH OF OUACHITA
On __10 / 23__ /2012 (MM/DD/YYYY), before me appeared _Natasha Pnie_ ,
to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE
BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL
BANK, FA and that the instrument was signed on behalf of the corporation (or association), by authority from its
board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation
(or association).

_Eva Reese_

_Eva Reese_

Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Assignment of Mortgage from:
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL
BANK F/K/A WASHINGTON MUTUAL BANK, FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000,
MONROE, LA, 71203, (ASSIGNOR),
to:
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC
8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

Mortgagor: **DAVID SATTOF AND SANDRA D. SATTOF**

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

All that certain lot or piece of ground situated in
Mortgage Premise: 2635 BLYTHEBURN ROAD RD TWP. OF RICE
                   MOUNTAIN TOP, PA 18707
                   LUZERNE
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

I, _Natasha Pnie_ , do certify that the precise address of the within named assignee
is:
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC
8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)

By: _Natasha Pnie_

_Natasha Pnie_ . **VICE PRESIDENT**

REC Book 3012 Page 201363

### JOAN HOGGARTH
### LUZERNE COUNTY CLERK OF RECORDS
### DIVISION OF JUDICIAL SERVICES AND RECORDS



**Recorder of Deeds Division**
**Luzerne County Courthouse**
**200 N. River Street**
**Wilkes-Barre, PA 18711**
**(570) 825-1641**

\*RETURN DOCUMENT TO:
NATIONWIDE TITLE CLEARING INC.
2100 ALT 19 NORTH
PALM HARBOR, FL 34683

**Instrument Number - 201834620**
Recorded On 6/29/2018 At 11:58:44 AM
\* Instrument Type - ASSIGNMENT OF MORTGAGE
User ID: KSC          \*Total Pages - 3
\* Mortgagor - JPMORGAN CHASE BANK SATTOF, DAVID
\* Mortgagee - SHELLPOINT MORTGAGE SERVICING
\* Customer - SIMPLIFILE LC E-RECORDING

\* FEES

| | |
|---|---|
| PA WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| COUNTY RECORDING FEE | $18.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| RECORDER'S ARCHIVES FEE | $3.00 |
| PIN CERTIFICATIONS | $20.00 |
| TOTAL PAID | $83.75 |

I hereby CERTIFY that this document is
Recorded in the Recorder of Deeds Office
of Luzerne County, Pennsylvania



Joan Hoggarth
Clerk of Records
Recorder of Deeds Division

PARCEL IDENTIFICATION NUMBER

Total Property Identification Numbers: 1

## THIS IS A CERTIFICATION PAGE

# Do Not Detach

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.



INSTRUMENT NUMBER - 201834620          BOOK: **3018** PAGE: **119273**

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
MS2   -1  -5C    -     RICE TOWNSHIP
       CERTIFIED 06/28/2018 BY AWA
```

Prepared By:

_____~~Sandy L Carter~~_____
JPMorgan Chase Bank, N.A., 780
Kansas Lane, Suite A, Monroe, LA,
71203, 800-401-6587

When Recorded Return To:
JPMorgan Chase Bank
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS 55 BEATTIE PLACE, MS #100, GREENVILLE, SC 29601, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 01/04/2002, in the amount of $140,000.00, made by DAVID SATTOF AND SANDRA D SATTOF to ABN AMRO MORTGAGE GROUP, INC., recorded on 01/11/2002, in the Office of the Recorder of Deeds of LUZERNE County, Pennsylvania, in Book REC/3002 and Page 9175.

Property is commonly known as: 2635 BLYTHEBURN ROAD RD RICE TOWNSHIP, MOUNTAIN TOP, PA 18707.

Dated on _06 / 22 / 2018_ (MM/DD/YYYY)

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

By: _Sandy L Carter_
_____Sandy L Carter_____
_____Vice President_____

PAGE 1

STATE OF LOUISIANA   PARISH OF OUACHITA
On ___06 / 22 / 2018___ (MM/DD/YYYY), before me appeared
___Sandy L Carter___, to me personally known, who did say that he/she/they is/are the
___Vice President___ of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
and that the instrument was signed on behalf of the corporation (or association), by authority from its board of
directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or
association).

___Katrina Marie Johnson  68375___

KATRINA MARIE JOHNSON, NOTARY PUBLIC
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 68375

Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Assignment of Mortgage from:
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC
8000, MONROE, LA 71203, (ASSIGNOR),
to:
NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS
55 BEATTIE PLACE, MS #100, GREENVILLE, SC 29601, ITS SUCCESSORS AND ASSIGNS,
(ASSIGNEE)

Mortgagor: DAVID SATTOF AND SANDRA D SATTOF

All that certain lot or piece of ground situated in
Mortgage Premise: 2635 BLYTHEBURN ROAD RD RICE TOWNSHIP
          MOUNTAIN TOP, PA 18707
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

I, ___Sandy L Carter___ , hereby certify that the below information and address for the
assignee are correct:
NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING, WHOSE ADDRESS IS
55 BEATTIE PLACE, MS #100, GREENVILLE, SC 29601, ITS SUCCESSORS AND ASSIGNS,
(ASSIGNEE)

By: ___Sandy L Carter___          Vice President

PAGE 2

### JOAN HOGGARTH
### LUZERNE COUNTY CLERK OF RECORDS
### DIVISION OF JUDICIAL SERVICES AND RECORDS



**Recorder of Deeds Division**
**Luzerne County Courthouse**
**200 N. River Street**
**Wilkes-Barre, PA 18711**
**(570) 825-1641**

*RETURN DOCUMENT TO:
FIRST AMERICAN MORTGAGE SOLUTIONS -
CFS

**Instrument Number - 201914025**
Recorded On 3/12/2019 At 3:54:20 PM
* Instrument Type - ASSIGNMENT OF MORTGAGE
User ID: LY                    *Total Pages - 3
* Mortgagor - SHELLPOINT MORTGAGE SERVICING SATTOF, DAVID
* Mortgagee - FEDERAL HOME LOAN MORTGAGE CORPORATION
* Customer - FIRST AMERICAN MORTGAGE SOLUTIONS - CFS

*FEES
```
PA WRIT TAX                $0.50
JCS/ACCESS TO JUSTICE     $40.25
COUNTY RECORDING FEE      $18.00
COUNTY ARCHIVES FEE        $2.00
RECORDER'S ARCHIVES FEE    $3.00
PIN CERTIFICATIONS        $20.00
TOTAL PAID                $83.75
```

I hereby CERTIFY that this document is
Recorded in the Recorder of Deeds Office
of Luzerne County, Pennsylvania



Joan Hoggarth
Clerk of Records
Recorder of Deeds Division

PARCEL IDENTIFICATION NUMBER

Total Property Identification Numbers: 1

## THIS IS A CERTIFICATION PAGE

# Do Not Detach

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

**INSTRUMENT NUMBER - 201914025        BOOK: 3019   PAGE: 41635**

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
████████████ - RICE TOWNSHIP
CERTIFIED 03/12/2019 BY RA

**PENNSYLVANIA**
COUNTY OF **LUZERNE**

WHEN RECORDED MAIL TO:
FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt whereof is hereby acknowledged, **NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING** located at **55 BEATTIE PLACE, SUITE 110, MS#01, GREENVILLE, SC 29601**, Assignor, does hereby grant, bargain, assign, transfer, convey, and set over unto **FEDERAL HOME LOAN MORTGAGE CORPORATION** located at **C/O NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING 55 BEATTIE PLACE, SUITE 110, MS#001, GREENVILLE, SC 29601**, Assignee, its successors and assigns, that certain Mortgage dated **JANUARY 04, 2002** executed by **DAVID SATTOF AND SANDRA D. SATTOF, HUSBAND AND WIFE**, Mortgagor, to **ABN AMRO MORTGAGE GROUP, INC.**, Original Mortgagee, in the amount of **$140,000.00** and recorded on **JANUARY 11, 2002** in the Office of the Register, Recorder, or County Clerk of **LUZERNE** County, State of **PENNSYLVANIA**, in Book **REC/3002** at Page **9175** as Document No. **5414867**, more particularly described and commonly known as:

**AS DESCRIBED IN SAID MORTGAGE**
Property Address: **2635 BLYTHEBURN ROAD, MOUNTAIN TOP, PA 18707**
**TOWNSHIP OF RICE**

TOGETHER WITH all rights, title, and interest in and to the premises, accrued or to accrue under said Mortgage.

TO HAVE AND HOLD the same unto Assignee, its successors and assigns, to Assignees proper use and benefit.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on 3-08-19 .

**NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING**

_Stephanie Wessel_
**STEPHANIE N. WESSEL, SUPERVISOR**

STATE OF **SOUTH CAROLINA** COUNTY OF **GREENVILLE** ) ss.

On 3-08-19 , before me, **TAMIAH B KERNS**, personally appeared **STEPHANIE N. WESSEL** known to me to be the **SUPERVISOR** of **NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC D/B/A SHELLPOINT MORTGAGE SERVICING** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

_Tamiah B Kerns_
**TAMIAH B KERNS (COMMISSION EXP. 4/21/2020)**
NOTARY PUBLIC

TAMIAH B. KERNS
MY COMMISSION
EXPIRES
4/21/2020
NOTARY PUBLIC
SOUTH CAROLINA

Page 1 of 2

**MERS PHONE: 1-888-679-6377**

I do hereby certify that the precise address of the Assignee Residence is:

**FEDERAL HOME LOAN MORTGAGE CORPORATION, C/O NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING 55 BEATTIE PLACE, SUITE 110, MS#001, GREENVILLE, SC 29601**

**STEPHANIE N. WESSEL, SUPERVISOR**

**Page 2 of 2**

# EXHIBIT "E"

# LOCAL BANKRUPTCY FORM 3015-1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>**Sattof, Sandra**<br>**Sattof, David** | CHAPTER 13<br><br>CASE NO. **5:23-bk-00774-MJC**<br><br>_____ ORIGINAL PLAN<br>_1st_ AMENDED PLAN (Indicate 1st, 2nd, 3rd, etc.)<br><br>_**0**_ Number of Motions to Avoid Liens<br>_**0**_ Number of Motions to Value Collateral |

## CHAPTER 13 PLAN

### NOTICES

Debtors must check one box on each line to state whether or not the plan includes each of the following items. If an item is checked as "Not Included" or if both boxes are checked or if neither box is checked, the provision will be ineffective if set out later in the plan.

| | | | |
|---|---|---|---|
| 1 | The plan contains nonstandard provisions, set out in § 9, which are not included in the standard plan as approved by the U.S. Bankruptcy Court for the Middle District of Pennsylvania. | ☐ Included | ☑ Not Included |
| 2 | The plan contains a limit on the amount of a secured claim, set out in § 2.E, which may result in a partial payment or no payment at all to the secured creditor. | ☐ Included | ☑ Not Included |
| 3 | The plan avoids a judicial lien or nonpossessory, nonpurchasemoney security interest, set out in § 2.G. | ☐ Included | ☑ Not Included |

### YOUR RIGHTS WILL BE AFFECTED

READ THIS PLAN CAREFULLY. If you oppose any provision of this plan, you must file a timely written objection. This plan may be confirmed and become binding on you without further notice or hearing unless a written objection is filed before the deadline stated on the Notice issued in connection with the filing of the plan.

## 1. PLAN FUNDING AND LENGTH OF PLAN.

### A. Plan Payments From Future Income

1. To date, the Debtor paid $ **0.00** (enter $0 if no payments have been made to the Trustee to date). Debtor shall pay to the Trustee for the remaining term of the plan the following payments. If applicable, in addition to monthly plan payments, Debtor shall make conduit payments through the Trustee as set forth below. The total base plan is $ **34,800.00** , plus other payments and property stated in § 1B below:

| Start mm/yyyy | End mm/yyyy | Plan Payment | Estimated Conduit Payment | Total Monthly Payment | Total Payment Over Plan Tier |
|---|---|---|---|---|---|
| 05/2023 | 04/2028 | $560.00 | $0.00 | $560.00 | $33,600.00 |
| | | | | Total Payments: | $33,600.00 |

2. If the plan provides for conduit mortgage payments, and the mortgagee notifies the Trustee that a different payment is due, the Trustee shall notify the Debtor and any attorney for the Debtor, in writing, to adjust the conduit payments and the plan funding. Debtor must pay all post-petition mortgage payments that come due before the initiation of conduit mortgage payments.

3. Debtor shall ensure that any wage attachments are adjusted when necessary to conform to the terms of the plan.

4. CHECK ONE: (     ) Debtor is at or under median income. *If this line is checked, the rest of § 1.A.4 need not be completed or reproduced.*

( ✓ ) Debtor is over median income. Debtor estimates that a minimum of $ _____0.00_____ must be paid to allowed unsecured creditors in order to comply with the Means Test.

**B. Additional Plan Funding From Liquidation of Assets/Other**

1. The Debtor estimates that the liquidation value of this estate is $ _____0.00_____ . (Liquidation value is calculated as the value of all nonexempt assets after the deduction of valid liens and encumbrances and before the deduction of Trustee fees and priority claims.)

*Check one of the following two lines.*

_____✓_____ No assets will be liquidated. *If this line is checked, skip § 1.B.2 and complete § 1.B.3 if applicable.*

_____ Certain assets will be liquidated as follows:

2. In addition to the above specified plan payments, Debtor shall dedicate to the plan proceeds in the estimated amount of $ _____ from the sale of property known and designated as _____ All sales shall be completed by _____ , 20 _____ . If the property does not sell by the date specified, then the disposition of the property shall be as follows: _____

3. Other payments from any source(s) (describe specifically) shall be paid to the Trustee as follows: _____

**2. SECURED CLAIMS.**

**A. Pre-Confirmation Distributions.** *Check one.*

☑ None. *If "None" is checked, the rest of § 2.A need not be completed or reproduced.*

**B. <u>Mortgages (Including Claims Secured by Debtor's Principal Residence) and Other Direct Payments by Debtor.</u>** *Check one.*

☑ None. *If "None" is checked, the rest of § 2.B need not be completed or reproduced.*

**C. <u>Arrears (Including, but not limited to, claims secured by Debtor's principal residence).</u>** *Check one.*

☐ None. *If "None" is checked, the rest of § 2.C need not be completed or reproduced.*

☑ The Trustee shall distribute to each creditor set forth below the amount of arrearages in the allowed claim. If post-petition arrears are not itemized in an allowed claim, they shall be paid in the amount stated below. Unless otherwise ordered, if relief from the automatic stay is granted as to any collateral listed in this section, all payments to the creditor as to that collateral shall cease, and the claim will no longer be provided for under § 1322(b)(5) of the Bankruptcy Code:

| Name of Creditor | Description of Collateral | Estimated Pre-petition Arrears to be Cured | Estimated Postpetition Arrears to be Cured | Estimated Total to be paid in plan |
|---|---|---|---|---|
| Shellpoint Mortgage Servicing | 2635 Blytheburn Rd Mountain Top, PA 18707-9148 | $26,526.58 | | $26,526.58 |

**D. <u>Other secured claims (conduit payments and claims for which a § 506 valuation is not applicable, etc.)</u>**

☑ None. *If "None" is checked, the rest of § 2.D need not be completed or reproduced.*

**E. <u>Secured claims for which a § 506 valuation is applicable.</u>** *Check one.*

☑ None. *If "None" is checked, the rest of § 2.E need not be completed or reproduced.*

**F. <u>Surrender of Collateral.</u>** *Check one.*

☑ None. *If "None" is checked, the rest of § 2.F need not be completed or reproduced.*

**G. <u>Lien Avoidance.</u>** *Do not use for mortgages or for statutory liens, such as tax liens. Check one.*

☑ None. *If "None" is checked, the rest of § 2.G need not be completed or reproduced.*

**3. PRIORITY CLAIMS.**

    **A. <u>Administrative Claims</u>**

1.  <u>Trustee's Fees.</u> Percentage fees payable to the Trustee will be paid at the rate fixed by the United States Trustee.

2.  <u>Attorney's fees.</u> Complete only one of the following options:

    a.  In addition to the retainer of $ __**1,000.00**__ already paid by the Debtor, the amount of $ __**3,500.00**__ in the plan. This represents the unpaid balance of the presumptively reasonable fee specified in L.B.R. 2016-2(c); or

    b.  $ _____ per hour, with the hourly rate to be adjusted in accordance with the terms of the written fee agreement between the Debtor and the attorney. Payment of such lodestar compensation shall require a separate fee application with the compensation approved by the Court pursuant to L.B.R. 2016-2(b).

3.  <u>Other.</u> Other administrative claims not included in §§ 3.A.1 or 3.A.2 above. *Check one of the following two lines.*

    ☐ None. *If "None" is checked, the rest of § 3.A.3 need not be completed or reproduced.*

    ☑ The following administrative claims will be paid in full.

| Name of Creditor | Estimated Total Payment |
|---|---|
| C bik Law, P.C. | $3,500.00 |

**B.  <u>Priority Claims (including, certain Domestic Support Obligations</u>**

   Allowed unsecured claims entitled to priority under § 1322(a) will be paid in full unless modified under §9.

| Name of Creditor | Estimated Total Payment |
|---|---|
|  |  |

**C.  <u>Domestic Support Obligations assigned to or owed to a governmental unit under 11 U.S.C. §507(a)(1)(B).</u>** *Check one of the following two lines.*

   ☑ None. *If "None" is checked, the rest of § 3.C need not be completed or reproduced.*

## 4.  UNSECURED CLAIMS

**A.  <u>Claims of Unsecured Nonpriority Creditors Specially Classified.</u>** *Check one of the following two lines.*

   ☑ None. *If "None" is checked, the rest of § 4.A need not be completed or reproduced.*

**B.  Remaining allowed unsecured claims will receive a pro-rata distribution of funds remaining after payment of other classes.**

## 5.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES. *Check one of the following two lines.*

Case 5523 blk 007744 MJC Doc 3552 Filed 06 2824 234 Entered 06 2824 234 09 3405 23 Desc
Main Document Page 46 of 55

☑ None. *If "None" is checked, the rest of § 5 need not be completed or reproduced.*

## 6. VESTING OF PROPERTY OF THE ESTATE.

**Property of the estate will vest in the Debtor upon**

*Check the applicable line:*

☐ plan confirmation.

☐ entry of discharge.

☑ closing of case.

## 7. DISCHARGE: (Check one)

☑ The debtor will seek a discharge pursuant to § 1328(a).

☐ The debtor is not eligible for a discharge because the debtor has previously received a discharge described in § 1328(f).

## 8. ORDER OF DISTRIBUTION:

If a pre-petition creditor files a secured, priority or specially classified claim after the bar date, the Trustee will treat the claim as allowed, subject to objection by the Debtor.

Payments from the plan will be made by the Trustee in the following order:

Level 1: _____
Level 2: _____
Level 3: _____
Level 4: _____
Level 5: _____
Level 6: _____
Level 7: _____
Level 8: _____

*If the above Levels are filled in, the rest of § 8 need not be completed or reproduced.* If the above Levels are not filled-in, then the order of distribution of plan payments will be determined by the Trustee using the following as a guide:

Level 1:  Adequate protection payments.
Level 2:  Debtor's attorney's fees.
Level 3:  Domestic Support Obligations.
Level 4:  Priority claims, pro rata.
Level 5:  Secured claims, pro rata.
Level 6:  Specially classified unsecured claims.
Level 7:  Timely filed general unsecured claims.
Level 8:  Untimely filed general unsecured claims to which the Debtor has not objected.

## 9. NONSTANDARD PLAN PROVISIONS

**Include the additional provisions below or on an attachment. Any nonstandard provision placed elsewhere in the plan is void. (NOTE: The plan and any attachment must be filed as one document, not as a plan and exhibit.)**

Dated:    06/28/2023                  /s/ Michael A. Cibik

                                                       Attorney for Debtor

                                                       Debtor

                                                       Joint Debtor

By filing this document, the debtor, if not represented by an attorney, or the Attorney for Debtor also certifies that this plan contains no nonstandard provisions other than those set out in § 9.

6

**EXHIBIT "F"**

| Post-Petition Due date | Date Posted | Amount Received | Amount Due | Credit | Suspense Application | Suspense Balance |
|---|---|---|---|---|---|---|
| 5/1/2023 | 4/11/2023 | $1,200.00 | $1,108.37 | $ | 91.63 | $ 91.63 |
| 6/1/2023 | 5/12/2023 | $1,200.00 | $1,108.37 | $ | 91.63 | $ 183.26 |
| 7/1/2023 | 6/16/2023 | $1,150.00 | $1,108.37 | $ | 41.63 | $ 224.89 |
| 8/1/2023 | 7/25/2023 | $1,200.00 | $1,108.37 | $ | 91.63 | $ 316.52 |
| 9/1/2023 | 8/21/2023 | $1,200.00 | $1,108.37 | $ | 91.63 | $ 408.15 |
| 10/1/2023 | 9/20/2023 | $1,300.00 | $1,108.37 | $ | 191.63 | $ 599.78 |
| 11/1/2023 | 10/24/2023 | $1,200.00 | $1,108.37 | $ | 91.63 | $ 691.41 |
| 12/1/2023 | | | $1,108.37 | $ | (1,108.37) | $ (416.96) |
| 1/1/2024 | | | $1,108.37 | $ | (1,108.37) | $ (1,525.33) |
| 2/1/2024 | | | $1,108.37 | $ | (1,108.37) | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |
| | | | | $ | - | $ (2,633.70) |

| Loan Number | ███████ |
|---|---|
| Debtor | SATTOF |
| BK filed date | 4/7/2023 |
| BK Case # | 23-00774 |
| Loan Acquired | 5/16/2018 |
| Post Next Due | 12/1/2023 |
| Suspense | 691.41 |

| Due Date | Due Amount | Credit | # Months | Total Due |
|---|---|---|---|---|
| 12/1/2023 | $1,108.37 | | 1 | $ 1,108.37 |
| 1/1/2024 | $1,108.37 | | 1 | $ 1,108.37 |
| 2/1/2024 | $1,108.37 | | 1 | $ 1,108.37 |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | | $ - |
| | | | Subtotal | $ 3,325.11 |
| | | | Less Unapplied | $ 691.41 |
| | | | Total to bring current | $ 2,633.70 |

$     3,325.11
$    (2,633.70)
$       691.41   unapplied

**Payment Address:**
Shellpoint Mortgage Servicing
P.O. Box 650840
Dallas, TX 75265-0840

**Overnight Payment Address:**
Shellpoint Mortgage Servicing
Attn Payment Processing
75 Beattie Place Ste LL202
Greenville, SC 29601



PHONE NUMBER:   (800) 365-7107
FAX NUMBER:   (866) 467-1187

February 13, 2024

SATTOF, DAVID
2635 BLYTHEBURN RD

MOUNTAINTOP, PA  18707

Payoff figures have been requested on the loan for the borrower and property described below.

DAVID SATTOF
SANDRA SATTOF
2635 BLYTHEBURN RD
MOUNTAIN TOP, PA  18707
Loan Type: Conventional

When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address.  Funds received in this office after 3:00 pm Eastern Time will be processed on the next business day, with interest charged to that date.

This payoff quote is effective  3/1/2024  and is good through  3/1/2024 . Any transactions that occur on or after the effective date may change the payoff amount.

| Projected Payoff Date | 3/1/2024 |
|---|---|
| Principal Balance | $142,436.17 |
| Interest To 3/1/2024 | $10,430.43 |
| Fees | $7,159.30 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $8,296.92 |
| Funds owed to borrower | ($687.43) |
| **Total Payoff** | **$167,635.39** |
| Per diem | $18.05 |

The next payment due date is 9/1/2022. Payments are made by Billing on a Monthly basis. The interest rate for this payment is 4.62500% and the P & I payment is 696.61.  The taxes are next due 4/13/2024.
**PLEASE CALL THE NUMBER LISTED ON THIS FORM TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

<u>Mailing Address</u>
Shellpoint Mortgage Servicing
75 Beattie Place
Suite LL202
Greenville, SC 29601

PO1.rpt - Internal
2/13/2024     20



PHONE NUMBER:   (800) 365-7107
FAX NUMBER:   (866) 467-1187

Payoff Policy Details:

1. When remitting funds, please use our loan number to ensure proper posting and provide us with the borrower's forwarding address .
2. We only accept funds on business days, which are Monday through Friday . Any funds received will be posted with the date received .
3. Continue making your monthly payments until you send us the amount needed to pay off your mortgage to avoid late charges or adverse credit reporting .
    a. If you currently have your monthly payment set up on automatic withdrawal (ACH), or have any pending payments set up, drafting will continue until the loan is paid in full, at which time future drafts will automatically be cancelled .
4. **If you are due for a refund,** that refund will be issued by check on day 20 after the date the loan is paid in full .
    a. Any refunds will be sent to the mailing address we have on record for this account . If your mailing address is changing, you must contact us to provide a new address .
5. The payoff total quoted above is valid through the stated good through date . Any transactions that occur on or after the issue date of this payoff statement may change the total payoff amount .
6. The payoff amount is subject to our final verification once we receive the payoff funds . We reserve the right, except where prohibited, to correct any portion of this statement at any time .
7. **If the amount we receive is insufficient to pay off this loan, we may use funds in the escrow balance to cover the short payoff .**
    a. **If the escrow balance is insufficient to pay off the total amount owed, we will attempt to contact you or the issuing agent. If we are unable reach you or the issuing agent, we will return the payoff funds and you will need to request a new quote .**
8. We will pay all escrowed items, including hazard and flood insurance and taxes, from your escrow account as normally scheduled up to the date we receive the payoff funds .
    a. You or your closing agent (if applicable) will need to request a refund from the appropriate tax authority or insurance company for any duplicate tax or insurance payments .
    b. Any existing lender-placed property insurance premium will be cancelled upon account payoff, and any related unearned premiums will be refunded .
9. Once the loan is paid in full, the appropriate security instrument will be released as follows :
    a. Real Property: a Release is recorded with your county and a copy will be sent to you once returned from the county, usually within 30-90 days, dependent upon state/county processing times .
    b. Personal Property: a Tile Lien Cancellation or UCC3 Termination will be sent to the mailing address we have on record for this account within 30-90 days .

**IMPORTANT: Update Your Mailing Address for Tax Documentation**
*"To ensure timely delivery of your tax documents related to your mortgage, please verify, and update your mailing address in your online account. To do so, sign into your account at myaccount.Shellpointmtg.com and go to your dashboard. Then, click on the "down" arrow beside your profile icon and select My Profile. Here you can update your address and phone number. We encourage you to update your personal information whenever anything changes."*



PHONE NUMBER:     (800) 365-7107
FAX NUMBER:     (866) 467-1187

████████████████████

<u>Wiring Instructions -</u> **\* You must include the "Reference" information listed below if wiring funds \***

Bank Name:
ABA Number:
Account Number:
Account Name:
Reference:



**"BEWARE OF SCAMS - WE WILL NEVER ASK YOU TO USE DIFFERENT WIRING INSTRUCTIONS - IF YOU RECEIVE ANY REQUEST TO USE INSTRUCTIONS DIFFERENT THAN THESE PLEASE CALL THE TELEPHONE NUMBER LISTED AT THE TOP THIS FORM TO CONFIRM NEXT STEPS ."**

**DAVID SATTOF  -** ████████████████

## <u>FEE DETAILS</u>

| Description | Amount |
|---|---|
| Attorney Cost | $875.00 |
| Certified Mail Cost | $10.20 |
| Postponement Fee | $400.00 |
| BKPP- Title Cost | $350.00 |
| BKPP- Property Inspection | $165.00 |
| BKPP- Attorney Cost | $775.00 |
| BKPP- Certified Mail Cost | $5.10 |
| BKPP- FC Costs | $2,013.00 |
| BKPP- Filing Cost | $66.00 |
| BKPP- Sheriff Cost | $2,500.00 |
| | **$7,159.30** |

## <u>FUNDS OWED BY BORROWER DETAILS</u>

| Description | Amount |
|---|---|
| Escrow Only Payment | $8,226.93 |
| Mortgage Insurance | $69.99 |
| | **$8,296.92** |

# EXHIBIT "G"

Fill in this information to identify your case and this filing:

| Debtor 1 | **Sandra** | | **Sattof** |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | **David** | | **Sattof** |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **Middle** District of **Pennsylvania**

Case number **5:23-bk-00774-MJC**

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1: Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.
   ☑ Yes. Where is the property?

   **1.1**

   **2635 Blytheburn Rd**
   Street address, if available, or other description

   **Mountain Top, PA 18707-9148**
   City          State          ZIP Code

   **Luzerne**
   County

   **What is the property?** Check all that apply.

   ☑ Single-family home
   ☐ Duplex or multi-unit building
   ☐ Condominium or cooperative
   ☐ Manufactured or mobile home
   ☐ Land
   ☐ Investment property
   ☐ Timeshare
   ☐ Other

   **Who has an interest in the property?** Check one.

   ☐ Debtor 1 only
   ☐ Debtor 2 only
   ☑ Debtor 1 and Debtor 2 only
   ☐ At least one of the debtors and another

   Other information you wish to add about this item, such as local property identification number:

   Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

   | Current value of the entire property? | Current value of the portion you own? |
   |---|---|
   | **$173,610.00** | **$173,610.00** |

   Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

   **Tenants by the Entirety**

   ☐ Check if this is community property (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here** .................................................. → | **$173,610.00** |

## Part 2: Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

   ☐ No
   ☑ Yes